**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

KENNETH HOFFMAN and
DONNA HOFFMAN, guardian for          CAUSE NO. CV 06-83-M-JCL
KENNETH HOFFMAN,

                Plaintiffs,

      vs.                              FINDINGS AND RECOMMENDATION
                                         OF U.S. MAGISTRATE JUDGE
GEICO INSURANCE COMPANY,

             Defendant.

_____

    This case is before the Court on GEICO's Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  Having reviewed the motion and briefs, the Court hereby enters the following:

**RECOMMENDATION**

    GEICO's Motion to Dismiss should be **GRANTED** with regard to the Hoffmans' claims of fraud, constructive fraud, and mistake, and those claims should be **DISMISSED**.  GEICO's motion should be **DENIED** in all further respects.

    **NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 1

Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this ___28th___ day of August, 2006.


_/s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge


**RATIONALE**

**I.   THE HOFFMANS' ALLEGATIONS**

Plaintiffs, Kenneth and Donna Hoffman, have brought this action seeking to obtain additional stacked uninsured[1] motorist insurance coverage from GEICO as a result of an automobile accident in which Kenneth Hoffman was involved.  Donna Hoffman is the natural mother and guardian of Kenneth Hoffman.  The Hoffmans allege as follows:

On August 24, 2000, Kenneth Hoffman was injured when the car in which he was a passenger collided with a tree.  The driver of the vehicle was killed, and Kenneth suffered catastrophic

_____

[1]The Hoffmans refer to their claim as one for uninsured coverage.  Since the tortfeasor in this case was not uninsured their claim may actually be one for underinsured coverage. Nevertheless, the Court will use the term employed by the Hoffmans.

injuries in the collision.

At the time of the accident, Kenneth had three vehicles insured by an insurance policy issued by GEICO, and each vehicle was covered by $100,000 uninsured motorist policy limit. GEICO charged a separate premium for each vehicle and its uninsured coverage.

On July 5, 2001, GEICO paid the Hoffmans the $100,000 policy limit from one of the three vehicles. In connection with the $100,000 payment, GEICO required Donna Hoffman to sign a full release of its liability which release is attached to the Hoffmans' Complaint.

The Hoffmans complain about several purported irregularities relative to the release which they allege render it invalid: (1) Donna Hoffman was not represented by an attorney, and the Hoffmans complain GEICO failed to advise her to seek representation;[2] (2) During the relevant time period GEICO had paid uninsured motorist benefits to other insured claimants without requiring a release of liability;[3] (3) When other insured claimants represented by attorneys signed releases, GEICO allowed them to reserve their rights to reopen a claim so that insurance coverages could be stacked if Montana's anti-stacking statute was

---

[2]Compl., ¶ 6.

[3]*Id*. at ¶ 8.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 3

ruled unconstitutional;[4] and (4) GEICO failed to advise Donna
Hoffman that it was possible that Montana's anti-stacking statute
could be found unconstitutional.[5]

Subsequent to Donna Hoffman's execution of the release the
Montana Supreme Court invalidated Montana's anti-stacking
statute.  Therefore, the Hoffmans allege GEICO is obligated to
pay the additional stacked insurance policy coverages pursuant to
the terms of the subject insurance policy because Kenneth's
damages exceed the amount of the insurance proceeds he has
already received.

The Hoffmans allege two causes of action in the Complaint.
First, they set forth a "Breach of Contract" claim alleging GEICO
breached the insurance policy by failing to pay the full amount
of the stacked coverages, but also that it breached its fiduciary
duty by concealing or failing to disclose facts regarding the
stacking of the applicable coverages.

By way of Count II, the Hoffmans seek a declaratory
judgment.  Specifically, the Hoffmans request the Court declare
the release agreement is invalid, and that the Hoffmans are
entitled to stacked coverages under the subject policy.  They
allege the release is invalid based on (1) GEICO's negligent

_____

[4] *Id*. at ¶ 9.

[5] *Id*. at ¶ 10.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 4

misrepresentation or fraud in obtaining the release; (2) GEICO's undue influence on Donna Hoffman; (3) the existence of a mistake of fact at the time the release was signed; (4) vague and ambiguous provisions of the release agreement; (5) GEICO's constructive fraud in obtaining the release; (6) the lack of Donna Hoffman's proper consent to the release which was obtained under undue influence and without sufficient material information; and (7) lack of consideration from GEICO for the release.[6]

## II.  APPLICABLE LAW - MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6) a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim(s) that would entitle the plaintiff to relief.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept all allegations of material fact as true, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to the nonmoving party.  *Tanner*, 879 F.2d at 576.  "A complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff relies on a different legal theory."  *Haddock v. Board of Dental Examiners of California*, 777

---

[6]Compl., ¶¶ 20-26.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 5

F.2d 462, 464 (9th Cir. 1985).  Finally, "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

Nonetheless, dismissal can still be granted if there is a lack of a cognizable legal theory, or if there is an absence of facts alleged under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d 209 (1986)).

Finally, the Hoffmans have attached a document to their Complaint to which the parties refer relative to the instant motion.  Although generally a court may not consider material beyond the pleading in its ruling on a motion to dismiss, the court may consider materials attached to the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## III. DISCUSSION

GEICO argues this action should be dismissed in its entirety as barred by the decision in *Dempsey v. Allstate Ins. Co.*, 104 P.3d 483 (Mont. 2004) discussed below.  Alternatively, GEICO moves for the dismissal of the Hoffmans' claims of fraud, constructive fraud, and mistake.

With regard to the requested dismissal of the entire action GEICO's motion requires the Court to construe the temporal limit on retroactivity imposed by *Dempsey*.  GEICO's motion requires the Court to consider whether the retroactive rule declared in *Hardy* extends to the facts of this case, or whether the limit to such retroactive application imposed by *Dempsey* bars *Hardy* from applying to this case."

### A.   Retroactivity of *Hardy*

On April 18, 2003, the Montana Supreme Court issued its decision in *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892 (Mont. 2003) holding that Montana's anti-stacking statute was unconstitutional and, therefore, insurers "had to 'stack' and pay [insurance] benefits for each coverage for which the insured had paid a separate premium."  *See Dempsey v. Allstate Ins. Co.*, 104 P.3d 483, ¶¶ 8, 33 (Mont. 2004).  Then, on December 30, 2004, the Montana Supreme Court concluded in *Dempsey* that the holding in *Hardy* applied retroactively.  *Dempsey*, at ¶ 37.

Although *Dempsey* held that the new decisional law of *Hardy* was to be applied retroactively, the Court imposed a limit on that retroactivity.  The limit imposed by the Court states that retroactive application of the *Hardy* rule will apply only "to cases pending on direct review or not yet final[.]"  *Dempsey*, at ¶ 31.

> For reasons of finality we also conclude that the retroactive effect of a decision does not apply *ab initio*, that is, it does not apply to cases that became final or were settled prior to a decision's issuance.

*Id*.  Stated another way, the court concluded as follows:

> For the foregoing reasons we conclude that *Hardy* applies retroactively to require payment of stacked uninsured, underinsured motorist and medical payment insurance coverages in qualifying circumstances on open claims arising before its issuance.  However, in the interests of finality, as discussed above, we limit this retroactivity to cases pending on direct review or not yet final.

*Id*. at ¶ 37.

GEICO's Motion to Dismiss is based on what GEICO perceives is the limit to retroactivity imposed by *Dempsey.*  GEICO argues that either the Hoffmans' acceptance of the "settlement" of $100,000, or their execution of the subject release agreement rendered their insurance claim "final or [] settled" prior to the April 18, 2003 decision in *Hardy*.  Therefore, GEICO concludes that pursuant to *Dempsey* the decision in *Hardy* cannot be retroactively applied to require the stacking of the insurance coverages at issue in this case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 8

The application of *Dempsey* to the facts of this case requires a careful reading of that case.  Undisputedly, under *Dempsey* a "case" involving the stacking of insurance coverages litigated to a final judicial conclusion prior to *Hardy* could not later enjoy the retroactive benefit of the new rule in *Hardy* because the litigated case was already final and closed. However, here the Court must determine where the temporal limit to retroactivity lies when parties did not even have a "case" pending in court at the time *Hardy* was decided, yet they had privately reached a purported final settlement of the insurance claim prior to *Hardy*.

As discussed herein, the Court concludes the limit to retroactivity recognized in *Dempsey* requires judicial finality of a claim or case, as opposed to a private agreement to resolve a claim.  Absent judicial finality a party still has the legal right to present issues to a court of law for final resolution. *Dempsey* permits retroactive application of *Hardy* to "cases" pending in litigation which were not yet final by April 18, 2003. Since, the Hoffmans did not have such a "case" pending at the time of the decision in *Hardy* the Hoffmans' insurance claim cannot be characterized as final or settled within the contemplation of *Dempsey.*

**B.   Temporal Limits of Retroactivity**

There are two separate questions raised by the general issue of retroactivity.  First, courts consider whether a new rule is even to be applied retroactively.  In the instant case *Dempsey* has already decided that issue.

Second, courts consider what circumstances mark the temporal limit barring the application of a retroactive new rule.  The substance of this case revolves around this second issue.  However, for background purposes, the Court will begin with a brief summary of the law on the first issue.

With regard to retroactivity in general, for a period of time stemming from *Linkletter v. Walker*, 381 U.S. 618 (1965) pertaining to criminal cases, and *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) pertaining to civil cases, the United States Supreme Court permitted some new rules of law to only be applied prospectively upon consideration of specified factors.  *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 94-95 (1993).

Ultimately, however, the Supreme Court determined that allowing a new rule to only be applied prospectively conflicted with the general rule of a presumption in favor of the retroactive application of a new rule of law.  *Harper*, 509 U.S. at 94, 96.  *See also Dempsey v. Allstate Ins. Co.*, 104 P.3d 483, ¶ 15 (Mont. 2004) (noting the strong presumption of retroactivity).  After determining it was unfair to apply some

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 10

new laws prospectively only, the Court in *Griffith v. Kentucky*,
479 U.S. 314 (1987) eliminated the restriction on retroactivity
and declared all new rules of criminal law must be retroactively
applied "to all 'criminal cases pending on direct review.'"
*Harper*, at 95 (quoting *Griffith*, at 322).  The Court's rationale
was that by the nature of judicial review the courts do not have
the legislative prerogative to make new rules retroactive or
prospective as they see fit.  *Id*.  Also, the Court was concerned
with violating "the principle of treating similarly situated
[parties] the same."  *Id*. (quoting *Griffith*, at 323).

Following *Griffith*, the Court in *Harper* established a new
rule of retroactivity applicable in civil cases.  The Court
stated its rule as follows:

> When this Court applies a rule of federal law to the parties
> before it, that rule is the controlling interpretation of
> federal law and must be given full retroactive effect in all
> cases still open on direct review **and as to all events,**
> **regardless of whether such events predate or postdate our**
> **announcement of the rule.**

*Harper*, at 97 (emphasis added).[7]  Stated another way, the court
in *Harper* declared that if a court applies a newly announced rule
of law to the parties in the very case in which the new rule is
announced, then the rule must be retroactively applied by all

---

[7]Again, the Court's rationale was that the courts have no
judicial authority to selectively declare certain laws as
retroactive or prospective based on some "selective temporal
barrier[]", and no authority to treat similarly situated litigants
differently.  *Harper*, at 97.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 11

other courts.  *Id*. at 96-98.

The difficult issue, however, is determining the limit in time to which retroactivity extends.  The only clear limit on the extent of retroactivity, consistent with the limit stated in *Dempsey*, is that the new rule will not be retroactively applied to a case already litigated to some final resolution.  A new rule is otherwise to be applied to "other litigants whose cases were not final at the time of the" announcement of the new rule, and to all "events" regardless of when those events occurred. *Harper*, at 96 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991) (White, J. concurring)).

The Court recognizes the states are free to limit the retroactive operation of their own interpretations of state law. *Harper*, 509 U.S. at 100; *Dempsey*, 104 P.3d at ¶ 24.  Accordingly, despite the limits which can be deciphered from U.S. Supreme Court decisions, the Court must consider the temporal limitations to retroactivity applicable under state law.

The *Dempsey* limitation to retroactivity has its origins in certain criminal law decisions where the courts considered whether to retroactively apply a new rule of criminal law to criminal cases closed prior to the issuance of the new rule. *Dempsey*, 104 P.3d 483, ¶¶ 20-21.  *Dempsey* also discussed the criminal case of *Griffith* which required the retroactive application of all criminal decisions, but noted that such

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 12

retroactivity is limited to only those "cases 'pending on direct review or not yet final.'" *Id*. at ¶ 22 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).  The *Dempsey* court noted that in the criminal law context the Supreme Court did not want retroactivity to be limited or determined by the "timing of [a defendant's] prosecution[]", and instead wanted the limit of retroactivity to be determined by the finality of a prosecuted "case."  *Id*.

Therefore, the criminal law context from which the court in *Dempsey* drew the temporal limitation on retroactivity necessarily contemplated a criminal case filed and prosecuted to finality in court.  Only then would the courts refuse to retroactively apply a new rule of criminal law.  By necessary implication, if a criminal case was not yet prosecuted in court at the time a new rule of criminal law was declared then the new rule would be retroactively applied to that criminal case if and when it was subsequently prosecuted in court.  *Dempsey*, at ¶ 22.  *Dempsey* extended this rationale to the civil context.

The circumstances not specifically addressed in either *Dempsey* and *Harper* are situations where the parties did not have any case presently in litigation in court at the time a new rule was announced.  However, it appears to this Court that the effect of *Dempsey* and *Harper* is that there is no express temporal limit to the retroactive application of a new rule if the dispute

between the parties has not yet become the subject of
litigation.[8]  Consistent with the language emphasized above the
Supreme Court has concluded that new rules "must be retroactively
applied to claims arising from facts predating" the decision
announcing the new rule. *Harper*, at 92 (citing *James B. Beam
Distilling Co. v. Georgia*, 501 U.S. 529, 532 (1991)). *Harper*
also declares that the new rule applies to all "events", whether
or not those events predate the announcement of the new rule.

In *Dempsey*, the court adopted the same temporal limit
established in *Harper*. *Dempsey*, 104 P.3d at ¶ 28.  Pursuant to
*Harper*, the *Dempsey* court stated "[i]n the interests of finality,
the line should be drawn between claims that are final and those
that are not[.]"[9]  *Id*.  "New legal principles, even when applied
retroactively, do not apply to cases already closed."  *Id*.
(quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758
(1995).  The court concluded as follows:

> Therefore today we reaffirm our general rule that "[w]e give
> retroactive effect to judicial decisions," [citation
> omitted].  We will, however, allow for an exception to that

---

[8]Of course, the Court recognizes there certainly are other
temporal limits imposed by law, but which are wholly independent of
rules of retroactivity, such as statutes of limitations.  If a case
has never been litigated in court a litigant could not obtain the
retroactive benefit of a new rule if his or her claim is barred by
the statute of limitations.

[9]Throughout the decision the court uses the terms "claims" and
"cases" interchangeably.  Nevertheless, this Court still construes
the terms to refer only to litigated cases finalized judicially.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 14

rule when faced with **a truly compelling case for applying a new rule of law prospectively only**.

*Dempsey*, at ¶ 29.

The facts in both *Dempsey* and *Harper* support a conclusion that there is no temporal limit to retroactivity if the parties did not have a case pending in litigation at the time a new rule is announced.  At issue in *Harper* was a refund of taxes assessed in 1985, 1986, 1987, and 1988, prior to the 1989 decision in *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989) which declared such taxes violated the constitution.  *Harper*, at 90-91. Subsequent to the decision in *Davis*, the petitioners filed a lawsuit to obtain a refund of the taxes assessed in those years. *Id*. at 91.  *Harper* held that the decision in *Davis* was to be retroactively applied to the subject tax assessments (or "events") in the 1980s.  *Id*. at 99.  The Court retroactively applied a new rule to events which were not yet the subject of litigation and which occurred prior to the announcement of the new rule.  Therefore, the apparent rule of retroactivity is that if an event is not yet in litigation, or if a litigated case is not yet final, then the rule will be retroactively applied to such event.

Similarly, although the court in *Dempsey* did not define what would constitute "a truly compelling case" for prospective application only, and although the court did not expressly apply

its limit to retroactivity to the facts in the *Dempsey* case,
those facts suggest the same rule can be discerned from *Dempsey*.
There Allstate paid, and Dempsey apparently accepted as a partial
settlement, the single medical payment policy limit of $2,000,
prior the decision in *Hardy* on April 18, 2003.  *Dempsey v.
Allstate Ins. Co.*, 104 P.3d 483, ¶ 7 (Mont. 2004).  Subsequent to
*Hardy*, Dempsey filed a class action lawsuit to force Allstate to
stack medical payment coverages on "all claims arising prior to
the *Hardy* decision."  *Id*. at ¶ 8.  It was in response to those
factual circumstances that the court in *Dempsey* declared the rule
in *Hardy* to be retroactive, although the court did not expressly
apply the retroactivity of *Hardy* to the facts of the *Dempsey*
case.[10]  Nevertheless, the facts of *Dempsey* support a conclusion
that although an insured claimant has "settled" a claim prior to
the decision in *Hardy*, the new rule in *Hardy* would be
retroactively applied to that insured's claim.

The Court further finds support for the denial of GEICO's
motion on the basis that the validity of, or the enforceability

_____

[10]The *Dempsey* decision was issued in response to a question
certified to it by the Honorable Sam E. Haddon, U.S. District Judge
for the District of Montana, Butte Division.  The federal case has
since reached a settlement and is currently proceeding as a class
action for settlement purposes only.  *Dempsey v. Allstate Ins. Co.*,
CV 03-66-BU-SEH.  Therefore, the federal court case never had the
opportunity to apply the retroactivity of *Hardy* to the facts of the
*Dempsey* case.

of the contractual release in this case can be viewed as a claim which is wholly independent of the applicability of *Hardy*. Irrespective of both *Hardy* and *Dempsey*, other than possible statutes of limitations or other such defensive issues, there is otherwise no legal barrier prohibiting the Hoffmans from filing a lawsuit challenging the validity or enforceability of the release signed in this case independent of a *Hardy* stacking claim.  In other words, if stacking were not an issue in this case, the Hoffmans have a legal right to bring a lawsuit to challenge the validity of the release, provided they have facts to support their legal claims.  The mere fact that the Hoffmans seek to apply the *Hardy* decision to their insurance claim if and when they successfully challenge the validity of the release cannot, as a matter of law, prevent their otherwise valid legal claims challenging the release.  A successful challenge to the validity of the release would render it void ab initio and the parties would then be faced with an open insurance claim to which *Hardy* potentially applies.

The Court notes the Hoffmans have pled at least one viable claim challenging the validity of the release independent of *Hardy* which is not the subject of GEICO's Motion to Dismiss.  The Hoffmans allege the release is invalid because it lacks consideration for the release of the additional policy coverages they seek in this lawsuit.  "A release may be set aside if it was

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 17

obtained fraudulently or without adequate consideration." *Sprunk v. First Bank Western Montana Missoula*, 741 P.2d 766, 769 (Mont. 1987).  Therefore, the Hoffmans' allegations at least state a claim upon which relief could be granted as to the validity of the subject release.[11]

GEICO makes much of the argument that even if the Court concludes the Hoffmans' insurance claim is not final based on the written release, the Court must still consider it to be final based on the parties' "settlement" and payment of the $100,000 policy limits.  However, it makes no difference to the analysis of this recommendation whether the parties' settlement, or the signed release finally resolved the Hoffmans' insurance claim prior to *Hardy* because either way there was no judicially final resolution.

---

[11]Although not argued by GEICO, the Court notes, without deciding, that the Hoffmans' lack of consideration claim should not be barred by the statute of limitations.  A claim challenging the validity of a written release is subject to the statute of limitations applicable to an action based on a contract in writing. *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 74 (Tex. Civ. App. 1978).  *See also Baker v. Massey*, 569 P.2d 987, 991 (Okla. 1977) (concluding claim for rescission of contract based on lack of consideration is subject to statute of limitations applicable to a contract in writing); *Thiel v. Taurus Drilling Ltd. 1980-II*, 710 P.2d 33, 40 (Mont. 1985) (applying written contract statute of limitations to claims for rescission of securities purchase contract).  In Montana the statute of limitations applicable to an action based on a written contract is 8 years, and the Hoffmans have filed this action within 8 years of the date of the release.  Mont. Code Ann. § 27-2-202(1).

**C.   Fraud, Constructive Fraud, and Mistake**

GEICO moves for dismissal of the Hoffmans' claims of fraud, constructive fraud, and mistake which are pled as challenges to the validity of the subject release.  GEICO argues the claims are subject to dismissal for failure to plead them with the requisite particularity, and because the claims are barred by the statute of limitations.

Because the statute of limitations issue disposes of these claims, the Court will not consider the particularity requirement of Fed. R. Civ. P. 9(b).

The prescribed period for the commencement of an action for relief on the grounds of fraud or mistake is 2 years from when the cause of action accrues which is not until the discovery of the facts constituting the fraud or mistake.  Mont. Code. Ann. § 27-2-203.[12]  *See Cartwright v. Equitable Life Assurance Socy. of the U.S.*, 914 P.2d 976, 984 (Mont. 1996).  The time at which discovery of the fraud occurs is a question of law to be determined from the facts.  *Id*. at 985.

A plaintiff cannot argue a lack of discovery merely due to ignorance of facts.  *Mobley v. Hall*, 657 P.2d 604, 606 (Mont. 1983).  The level of discovery required is "such discovery as

---

[12]This statute applies to claims of both actual and constructive fraud.  *Fleming v. Fleming Farms, Inc.*, 717 P.2d 1103, 1107 (Mont. 1986).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 19

would lead a prudent man to inquiry or action." *Id*. 657 P.2d at 607.  A party asserting a fraud is put on inquiry notice of the other party's misdeeds, and the law requires that a plaintiff must exercise ordinary diligence to discover the facts constituting the fraud.  *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989).

Under certain circumstances the discovery of facts constituting fraud may be prevented by a defendant's fraudulent concealment, and whether fraudulent concealment occurred is a question of law.  *Cartwright*, at 14, 914 P.2d at 985.

> Fraudulent concealment consists of "the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a cause of action."  [Citations omitted.]  To invoke this doctrine, plaintiffs must show "affirmative conduct by the defendant calculated to obscure the existence of the cause of action."  [Citations omitted.]

*Cartwright*, 914 P.2d at 986; *Holman*, 773 P.2d at 1203.

The Court finds the Hoffmans' claims of fraud, constructive fraud, and mistake are barred by the 2-year statute of limitations.  All of those allegations stem from the issue of whether insurance coverages could be stacked, i.e. whether GEICO committed any fraud with regard to the Hoffmans' future ability to stack coverages, and whether the parties made any mistake concerning such future ability to stack.  In light of the Hoffmans' inquiry notice imposed on them by law, and since there is no suggestion of any active concealment committed by GEICO,

the Court concludes they could have discovered the fraud or mistake before the decision in *Hardy* was issued.

Nevertheless, the decision in *Hardy* resolved the stacking issue on April 18, 2003, and at the very latest the statute of limitations began to run by that date because it would have exposed any alleged fraud or mistake made by the parties regarding stacking.  The Hoffmans did not file this action until March 13, 2006.  Therefore, the statute of limitations bars those claims.

In their brief the Hoffmans also emphasize their claim that GEICO failed to disclose to them that it was allowing other insureds to reserve the right to assert a claim for stacking if subsequently allowed by law.  Such alleged failure to disclose occurred, if at all, by the time Donna Hoffman signed the release on July 5, 2001.  There is no suggestion that subsequent to the date of the release GEICO affirmatively concealed from the Hoffmans the fact that other insured claimants were reserving their rights, and such other reservations could have been readily discoverable before March 13, 2004, 2 years prior to the filing of this action.  Therefore, any fraud claim based on those facts should be dismissed.

## IV.  CONCLUSION

The Court construes the temporal limit imposed by *Dempsey* as requiring a judicially final resolution to a claim or a case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE/ PAGE 21

Since no such finality occurred with regard to the Hoffmans'
settlement then the retroactive rule announced in *Hardy* would
apply if the Hoffmans successfully challenge the validity of the
release agreement they signed.  Accordingly, GEICO's motion
should be denied, except as to the claims of fraud, constructive
fraud, and mistake which should be dismissed.